IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:18–CR-30102-NJR |
| ) | |
| KYLE MATTHEWS, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This action is before the Court on a Motion to Suppress Evidence filed by Defendant Kyle Matthews (Doc. 28). Matthews moves to suppress all evidence obtained through execution of a search warrant at 21000 North Emerald Road on April 2, 2018. For the reasons set forth below, the motion is denied.

## BACKGROUND

On March 31, 2018, Defendant Kyle Matthews entered an O'Reilly's Auto Parts store in Carlyle, Illinois, with a 10-inch-long, white PVC pipe bomb (Doc. 29-2; Doc. 44, pp. 14-16). An employee of the store, Michael Long, overheard Matthews and another O'Reilly's employee, Zachary Smith, discussing what to do with the bomb, including placing it at a school, a church, a Ford dealership, or another auto parts store in Carlyle (Doc. 44, pp. 15-16). Long also heard Matthews and Smith say they had detonated a pipe bomb near Keyesport, Illinois, on March 30, 2018, and that they were surprised they did not go to jail because the explosion was very loud (*Id.*, p. 16).

Concerned that Matthews and Smith were going to do something "very bad," Long went to the Clinton County Sheriff's Office the following day and told Officer Wendy Bromley about what he had seen and heard (*Id.*, Doc. 29-3). Officer Bromley reported this information to Detective Charles Becherer of the Clinton County Sheriff's Office, who then met with Long (*Id.*, p. 15-16). Detective Becherer also spoke with Sergeant Dennis Perez of the Clinton County Sheriff's Office (*Id.*). Sergeant Perez told Detective Becherer that the Sheriff's Office had received a complaint of a very loud explosion on March 30, 2018, that shook the complainant's house (*Id.*). The person lived approximately 1.5 miles south of Matthews's residence (*Id.*). Additionally, Sergeant Perez reported having recently talked to an individual who said the "word on the street" is that Matthews has explosives (*Id.*).

After speaking with Long, Officer Bromley, and Sergeant Perez, Detective Becherer passed the information along to the State's Attorney of Clinton County, John Hudspeth (Doc. 45). Hudspeth then prepared a Complaint for Search Warrant and a Search Warrant for Matthews's residence (*Id.*). It is common practice for the State's Attorney to prepare these documents (*Id.*). Detective Becherer reviewed the documents before presenting them to the judge. (*Id.*).

On April 2, 2018, Detective Becherer presented the Complaint for Search Warrant to a circuit court judge in Clinton County (Docs. 29-1, 29-2). The complaint described the place to be searched as:

> "The structure of the former Fin and Feather restaurant, motor home and camper trailers, and all outbuildings located at 21000 North Emerald Road . . . and all other structures and things situated thereon . . . the motor home

and camper trailer are situated within approximately 50 feet to the east behind the former Fin and Feather restaurant building. Said motor home and camper trailer are believed to be occupied by persons including Kyle S. Matthews . . . who is also believed to have access to all other structures and building situated on the premises to be searched.

(Doc. 29-1).

Detective Becherer also provided an affidavit supporting the complaint, in which he relayed the information provided by Long regarding the incident at O'Reilly's Auto Parts. Detective Becherer further attested that a witness recently informed the Clinton County Sheriff's Office that Matthews was known on the street to have explosives, that Officer Bromley had found social media posts indicating Matthews possesses materials suitable for the construction of explosive devices, and that on March 30, 2018, a Clinton County citizen reported hearing an explosion that shook her home, which is about 1.5 miles from Matthews's residence (Doc. 29-2). Finally, attached to the affidavit were seven photographs of the premises to be searched (with no identifying information or address markers), which Detective Becherer "believed to be the residence of [Matthews]." (*Id.*). The affidavit itself makes no mention of 21000 North Emerald Road or Matthews's connection to that address (*Id.*).

Both Detective Becherer and Long also testified at a hearing on the search warrant complaint. Long testified that Smith and Matthews discussed "blowing up bombs that night" and that Matthews had a "bomb on him" inside the store (Doc. 29-3, pp. 3-4). Detective Becherer testified that he received information that Matthews had admitted detonating a bomb on March 30, 2018, and that Matthews had made social media postings indicating he was in possession of explosives or materials to make explosives (*Id.*, pp. 7-

8). Detective Becherer further verified that he intended to search the entire Fin and Feather restaurant property, including a motor home, a camper, an outbuilding, several dumpsters and vehicles, and the primary structure of the former restaurant itself because Matthews had "access to all those places" (Doc. 29-3, pp. 8-9).

Finding there was probable cause, the judge issued a search warrant for "the former Fin and Feather restaurant, motor home and camper trailers, and all out buildings located at 21000 North Emerald Road . . . Said motor home and camper trailer are believed to be occupied by persons including Kyle S. Matthews (DOB 1-5-93), who is also believed to have access to all other structures and building[s] located on the premises to be searched." (Doc. 29-4). Among other things, the warrant authorized seizure of all pipe bombs, bombs of other kinds, incendiary devices, gunpowder, firearms, ammunition, and explosive materials (*Id.*). The warrant was executed shortly thereafter, and numerous items were seized from a camper on the premises belonging to Matthews, including a machine gun, a firearm silencer, and an unregistered short barrel rifle (Docs. 29-5, p. 44). Matthews was living in the camper at the time of the search (Doc. 29-6).

On June 7, 2018, a federal Grand Jury charged Matthews in a three-count indictment (Doc. 1). Count 1 charged Matthews with illegal possession of a machine gun, Count 2 charged Matthews with unlawful possession of an unregistered firearm silencer, and Count 3 charged Matthews with unlawful possession of an unregistered short barreled rifle (*Id.*).

Matthews now seeks to suppress the evidence obtained during the search because, he asserts, the search warrant was defective and violated his Fourth Amendment rights

(Doc. 28). Specifically, Matthews claims the "bare bones affidavit" by Detective Becherer failed to establish probable cause to search 21000 North Emerald Road, as there was no nexus between the alleged illegal activity, Matthews, and any of the buildings located at 21000 North Emerald Road. Furthermore, he argues, the warrant was fatally overbroad in that there was no probable cause to search *all* of the structures at 21000 North Emerald Road and no facts to support a conclusion that Matthews had access to each building.

After Matthews filed his Motion to Suppress in this case, Detective Becherer met with Long again to confirm his recollection of the information Long gave him on April 1, 2018 (Doc. 45). Long verified that he told Detective Becherer: (1) that Matthews told him he lived in a camper behind the old Fin and Feather Restaurant near Keyesport; (2) Matthews works on cars in the shed next to his camper; (3) Matthews has free reign of the property; and (4) Matthews sometimes works on cars in the back portion of the old restaurant (*Id.*). Long also told Detective Becherer that Zachary Smith showed him where Matthews lived, and that Matthews brought several weapons into the O'Reilly's store, including a highly modified AR-15 with a silencer on it (*Id.*).

## DISCUSSION

While Matthews argues that the warrant in this case was issued without probable cause, the Government submits that the Court should decide Defendant's motion solely on whether the good faith exception to the exclusionary rule applies—without reaching the issue of probable cause. Nevertheless, the Government argues, probable cause did exist to search the entire property at issue.

Although the Government believes Matthews's motion to suppress evidence can

be decided on the good faith exception alone, the Court finds that a review of the warrant application for probable cause would be beneficial in this case.[1]

I. **The Fourth Amendment**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. In order to "compel respect for the constitutional guaranty," the United States Supreme Court created the exclusionary rule. *Davis v. United States*, 131 S.Ct. 2419, 2426 (2011) (citing *Elkins v. United States*, 364 U.S. 206, 217 (1960)). When applicable, that rule forbids the use of evidence obtained by police officers in violation of the Fourth Amendment.

It is well established, however, that a violation of the Fourth Amendment does not necessarily mean that the exclusionary rule applies. *Herring v. United States*, 555 U.S. 135, 140 (2009) ("We have repeatedly rejected the argument that exclusion is a necessary consequence of a Fourth Amendment violation."). It applies only when the benefits of deterring future Fourth Amendment violations outweighs the heavy costs of suppressing evidence. *Herring*, 555 U.S. at 141. "The principal cost of applying the rule is, of course, letting guilty and possibly dangerous defendants go free." *Herring* 555 U.S. at 141 (citing *Leon*, 468 U.S. at 908); *Davis*, 131 S.Ct. at 2427 ("Exclusion exacts a heavy toll on both the judicial system and society at large" because "its bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment.")

---

[1] The parties assert, and the Court agrees, that the motion to suppress can be decided without an evidentiary hearing because the documents submitted by the parties establish a sufficient record for the Court to determine whether probable cause existed and/or whether the good faith exception applies.

As a result, exclusion "has always been our last resort, not our first impulse." *Herring*, 555 U.S. at 140 (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)).

II.     **Probable Cause**

A search warrant affidavit establishes probable cause when "considering the totality of the circumstances, there is sufficient evidence to cause a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006). "Probable cause denotes more than a mere suspicion, but does not require certainty." *United States v. Fleischli*, 305 F.3d 643, 651 (7th Cir. 2002). In determining whether there is probable cause to issue a search warrant, the judge's task is "to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Butler*, 71 F.3d 243, 248–49 (7th Cir. 1995) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

The Seventh Circuit Court of Appeals has held that the standard of review of a determination that probable cause exists supporting issuance of a search warrant is "one of affirmance absent clear error by the issuing magistrate." *United States v. Pless*, 982 F.2d 1118, 1124 (7th Cir. 1992). Indeed, "[a] magistrate's determination of probable cause 'is to be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.'" *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005) (quoting *United*

*States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999)).

Matthews argues that Detective Becherer's affidavit fails to establish probable cause because it does not present facts and circumstances demonstrating a fair probability that evidence of a crime would be found at 21000 North Emerald Road.

First, Matthews argues, the affidavit relies solely on Detective Becherer's "belief" that Matthews resides at 21000 North Emerald Road. Detective Becherer provided no evidence of property ownership, rental records, utility bills, or any information from any source that Matthews was living at 21000 North Emerald Road, was seen on the premises, or that any illegal activity had taken place there. Matthews argues that the only plausible inference to be drawn from the affidavit is that he is a suspect and, therefore, evidence of a crime will probably be found at his residence. And under Seventh Circuit precedent, that inference is impermissible. *See United States v. Wiley*, 475 F.3d 908, 916 (7th Cir. 2007) (finding it inappropriate to adopt a categorical rule that, in every case, probable cause exists to search a particular location simply because a suspect resides there).

Matthews relies on *United States v. Brown*, in which the Seventh Circuit upheld the district court's finding that, under the totality of the circumstances, the search warrant affidavit failed to establish probable cause for searching the defendant's residence. *United States v. Brown*, 832 F.2d 991, 994 (7th Cir. 1987). In *Brown*, the affidavit in support of the search warrant stated that the defendant leased apartment #709 at 1201 Westminster Row but provided no other information supporting the detective's belief that the defendant actually leased that apartment. *Id.* The Court noted that, had the affidavit shown the address truly belonged to the defendant, "there of course would have been probable

cause." *Id.*; *see also United States v. McNeal*, 82 F. Supp. 2d 945, 957 (S.D. Ind. 2000) (affidavit provided no factual basis for affiant's belief that residence was under defendant's control and, as such, was insufficient to establish probable cause to search the residence). However, the failure to show how the police knew the address belonged to defendant, in addition to the "paucity of information suggesting that a search of the . . . address would uncover evidence of wrongdoing," did not support a finding of probable cause. *Id.*

Likewise, Matthews argues, the affidavit here provided no factual basis for Detective Becherer's unsubstantiated "belief" that Mr. Matthews resided at 21000 North Emerald Road. Furthermore, the affidavit failed to provide any nexus between the alleged criminal activity and 21000 North Emerald Road. There was no indication Matthews was ever observed at 21000 North Emerald Road, that any illegal activity took place there, or that evidence would likely be found there.

The United States admits that Detective Becherer did not explain in his affidavit or his testimony how he knew Matthews lived at 21000 North Emerald Road or had access to all buildings on the property. Nevertheless, the Government contends there was a sufficient link demonstrated between Matthews and 21000 North Emerald Road to establish probable cause for the search warrant, relying on *United States v. Hunter*, 86 F.3d 679 (7th Cir. 1996), to support its position.

In *Hunter*, the defendant was accused of conspiring with his father to rob numerous banks in several states while masked as various presidential figures. *Hunter*, 86 F.3d at 681. In his suppression motion, Hunter asserted the search warrant for his

residence was issued without probable cause when the warrant application and affidavit did not state how the FBI knew his residence was, in fact, his residence. *Id.*

The Seventh Circuit noted that an "affidavit's failure to state explicitly that 510 Palace Court was Hunter's residence, by itself, is not a fatal flaw." *Id.* The documents established the place to be searched was Hunter's residence, as they referred to it four times without reference to any other place. *Id.* at 682. The Court concluded that while the affidavit never explicitly stated that 510 Palace Court was Hunter's residence, "that is the only logical conclusion supported by a common-sense reading of the affidavit." *Id.*

As for a connection between the residence and the items sought, the Court noted that Hunter had turned himself in prior to the search, which, in itself, weighed in favor of finding probable cause to search his residence. *Id.* Furthermore, the warrant application and affidavit indicated the FBI had seized a number of incriminating items from the co-conspirator's house, and the two men used the same *modus operandi*—including wearing masks of American presidents and carrying certain guns. *Id.* The "continuous nature of the crimes made it reasonable to conclude that they preserved those items for future use, and that Hunter might keep them in his residence." *Id.* There also was testimony from Hunter's ex-wife who told the FBI he kept an office and meticulous records in his home. *Id.*

The Government argues that the affidavit in this case similarly indicated the crime was ongoing and, thus, evidence would likely be found at Matthews's home. Matthews admitted detonating a bomb on March 30, 2018—the same day a citizen reported hearing a loud explosion about one-and-a-half miles from Matthews's residence. The next day,

Matthews carried a pipe bomb around O'Reilly's Auto Parts and discussed detonating it in certain locations. And social media posts indicated Matthews was in possession of materials to make explosives. The Government submits that these factors support the idea that evidence would be found at Matthews's home and, thus, there was probable cause to issue the warrant.

The Court is not so convinced. While these factors are evidence of Matthews's alleged illegal activity, they do not create a link between that activity and 21000 North Emerald Road. It is true that "[w]arrants may be issued even in the absence of direct evidence linking criminal objects to a particular site." *United States v. Kelly*, 772 F.3d 1072, 1080 (7th Cir. 2014) (quoting *United States v. Orozco*, 576 F.3d 745, 749 (7th Cir. 2009)). Furthermore, a judge is "entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense . . . ." *Id.* In such cases, however, there is *some* evidence from which that inference can be drawn.

In *Kelly*, the affidavit established a reasonable probability the defendant was a drug dealer and evidence of the crime would be found at the defendant's residence. *Id.* The affidavit stated that the defendant had been seen emerging from behind the residence to be searched and an informant had previously met the defendant at the rear door of the residence. *Id.* Importantly, the detective attested that, based on his experience in law enforcement and executing more than 700 narcotics search warrants, drug dealers are likely to keep contraband in their homes. *Id.* Accordingly, the Court found there was a fair probability that evidence would be found at the defendant's residence. *Id.*

Similarly, in *United States v. Orozco*, the warrant application stated that the

defendant was a "large-scale drug trafficker" from whom reliable sources had purchased drugs "in the recent past." *Id.* (citing *United States v. Orozco*, 576 F.3d 745, 748 (7th Cir. 2009)). The agent's affidavit further stated that, based on his ten years of experience, he knew that high-ranking gang members often kept membership lists, drug transaction records, and other evidence of gang- and drug-related activity in their homes. *Orozco*, 576 F.3d at 748. The Court in *Orozco* held that while the agent's belief about finding evidence in a gang member's home was not corroborated by information specific to Orozco's activities at his home, the "magistrate judge was entitled to credit [the agent's] lengthy experience and high degree of confidence that the sought-after evidence was very likely to be found in Orozco's home." *Id.* at 749.

Here, Detective Becherer's affidavit and testimony provide no explanation as to why, in his experience, he believed evidence of any wrongdoing would be found at Matthews's home. The lack of facts from which a judge could reasonably infer that evidence would be found in Matthews's residence, combined with the affidavit's failure to provide any factual support for the conclusion that Matthews lived at 21000 North Emerald Road or had access to all buildings on the property, leads the Court to conclude that probable cause did not exist to search Matthews's residence at 21000 North Emerald Road. And, if probable cause was not established to search Matthews's residence at 21000 North Emerald Road, certainly it was not established to search *every* building at 21000 North Emerald Road.

Even if probable cause is lacking, however, "exclusion is not appropriate where 'the police act with an objectively reasonable good-faith belief that their conduct is

lawful.'" *United States v. Kienast*, 907 F.3d 522, 527 (7th Cir. 2018). Thus, the Court must determine whether the good faith exception to the exclusionary rules applies.

## II. Good Faith Exception

The Supreme Court adopted the good faith exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897 (1984). Under the good faith exception, the fruits of a search based on an invalid warrant may be admitted at trial if the executing officer relied on the invalid warrant in good faith. *Id.* at 922; *see also United States v. Kienast*, 907 F.3d 522, 527 (7th Cir. 2018) ("[E]xclusion is not appropriate where the police act with an objectively reasonable good-faith belief that their conduct is lawful."). In *Leon*, the Supreme Court explained that where "law enforcement officers have acted in objective good faith or their transgressions have been minor" the costs of the suppression on society and the judicial system compared to the magnitude of the benefit conferred on guilty defendants "offends basic concepts of the criminal justice system." *Id.* at 908.

A police officer's decision to obtain a warrant is treated as *prima facie* evidence that the officer was acting in good faith. *Id.* at 922; *United States v. Mykytiuk*, 402 F.3d 773, 777 (7th Cir. 2005). Additionally, "[c]onsulting with the prosecutor prior to applying for [a] search warrant provides additional evidence of [that officer's] objective good faith." *United States v. Pappas*, 592 F.3d 799, 802 (7th Cir. 2010) (citation and internal quotation marks omitted).

A defendant can rebut the *prima facie* evidence of good faith by showing that (1) the affiant misled the issuing judge with a reckless or knowing disregard for the truth; (2) the issuing judge abandoned his judicial role; (3) the complaint supporting the search

warrant was "bare bones" or "so lacking in indicia of probable cause" that belief in the existence of probable cause is unreasonable; or (4) the warrant was so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. *United States v. Glover*, 755 F.3d 811, 818-19 (7th Cir. 2014) (citing *Leon*, 468 U.S. at 923).

In this case, there is *prima facie* evidence that Detective Becherer acted in good faith. Not only did he decide to obtain a search warrant, but he also consulted with State's Attorney Hudspeth, who himself prepared the Complaint for Search Warrant. Therefore, the burden shifts to Matthews to rebut the *prima facie* evidence of good faith. To demonstrate that Detective Becherer did not rely in good faith on the warrant, Matthews solely argues that the affidavit was so lacking in probable cause that no officer reasonably could have relied on it.

In determining whether Detective Becherer could have relied in objective good faith on the magistrate's decision to issue a search warrant, the Court must determine whether Detective Becherer could have reasonably believed the materials presented to the magistrate judge were sufficient to establish probable cause. *United States v. Koerth*, 312 F.3d 862, 869 (7th Cir. 2002). This analysis is similar to a qualified immunity analysis. *Id.* Police officers are presumed to have knowledge of "well-established legal principles as well as an ability to apply the facts of a particular situation to these principles." *Id.* Thus, evidence will be excluded where courts have clearly held that a materially similar affidavit previously failed to establish probable cause under identical facts or the affidavit is so plainly deficient that any reasonably well-trained officer would have known that it

failed to establish probable cause and that he should not have applied for the warrant. *Id.*

Matthews again points to the lack of any information linking him or any illegal activity to 21000 North Emerald Road in Detective Becherer's affidavit. Matthews argues that, without any such nexus, no reasonable officer could rely in good faith on the existence of probable cause in the affidavit. Matthews also argues that longstanding Seventh Circuit law holds that probable cause to search one part of a multi-unit property does not support a warrant authorizing the search of the entire property. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). Despite this well-established legal principle, Detective Becherer made no attempt in his affidavit or testimony to establish probable cause to search the campers, the restaurant, or the single apartment unit adjoining the Fin and Feather restaurant.

It is true that a warrant is fatally overbroad when it authorizes the search of an entire multi-unit building and the officers do not know which unit contains the evidence of illegal conduct. *Jacobs*, 215 F.3d at 771; *United States v. Johnson*, 26 F.3d 669, 694 (7th Cir. 1994). That rule does not apply, however, "when (1) the officer knows there are multiple units and believes there is probable cause to search each unit, or (2) the targets of the investigation have access to the entire structure." *Johnson*, 26 F.3d at 694. In determining whether an officer had a good faith belief that a defendant had access to the entire structure, the Seventh Circuit has stated that "factual perfection" is not required; rather, officers are merely required to "act reasonably." *Id.* (citing *Illinois v. Rodriguez*, 497 U.S. 177, 183–84 (1990)). "[I]n order to satisfy the 'reasonableness' requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must

regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable." *Id.* (quoting *Rodriquez*, 497 U.S. at 183).

In this case, Detective Becherer reasonably believed that Matthews not only lived at 21000 North Emerald Road, but also had access to each structure on the property—rendering the rule stated in *Jacobs* inapplicable. Although it was not articulated in his affidavit or testimony before the judge, Detective Becherer had knowledge from his interview of Long on April 1, 2018, that Matthews lived in a camper behind the old Fin and Feather Restaurant, worked on cars in the shed next to his camper and the back of the old restaurant, and generally had free reign of the property (Doc. 45).

Detective Becherer also knew that Matthews brought a pipe bomb into O'Reilly's and discussed targets for detonating it, that he possessed materials to make explosives, that he was known on the street to have explosives, and that an explosive was recently detonated and heard a mile and a half from Matthews's residence. Based on this information—and his knowledge of Matthews's free reign of the property—it was reasonable for Detective Becherer to believe probable cause existed to search the camper Matthews lived in as well as the other structures on the property. And while he may not have articulated the reasons for that belief in his affidavit or testimony, the Court agrees with the Government that the exigency of the situation may have contributed to the error.

Because Detective Becherer relied in good faith on the warrant in searching all buildings at 21000 North Emerald Road, the good faith exception to the exclusionary rule applies in this instance. Accordingly, the Court finds that Defendant's Motion to Suppress should be denied.

## Conclusion

Although probable cause was lacking to support a search of 21000 North Emerald Road, the good faith exception to the exclusionary rule applies, and Defendant Kyle Matthews's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** January 28, 2019

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**